# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

GEORGE TERRANCE BESSER,

       Movant,

                                File No. 1:09-CV-948

v.

                                HON. ROBERT HOLMES BELL

UNITED STATES OF AMERICA,

       Respondent.

_____/

## O P I N I O N

    This matter is before the Court on Movant George Terrance Besser's motion pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. (Dkt. No. 1.)  Also before the Court is Movant's motion to disqualify the Judge.  (Dkt. No. 15.)  For the reasons that follow, these motions will be denied.

    Movant was indicted in an 83 count indictment involving eight defendants on October 27, 2004, on the following charges:  (1) mail fraud, in violation of 18 U.S.C. § 1341; (2) conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371; (3) conspiracy to commit money laundering, in violation of 18 U.S.C. § 371; (4) conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; and (5) promotion money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i).  On June 14, 2005, Movant was convicted on all counts.  (1:04-CR-165, Dkt. Nos. 427, 429.)  Movant appealed, and his conviction was affirmed on February 19, 2008.  (1:04-CR-165, Dkt. No. 704.)  Movant filed his initial § 2255 motion on October 15, 2009.

## II.

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the petitioner shows either 1) "cause" and "actual prejudice"; or 2) "actual innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621-22 (1998); *United States v. Frady*, 456

U.S. 152, 167-68 (1982). An ineffective assistance of counsel claim, however, is not subject to the procedural default rule. *Massaro*, 538 U.S. at 504. An ineffective assistance of counsel claim may be raised in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *Id.*

In reviewing a § 2255 motion where factual disputes arise, "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). The Court must grant a hearing to determine the issues and make findings of fact and conclusions of law on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No evidentiary hearing is required if the allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine,* 488 F.3d at 333 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Cases, Rule 4(b). Where the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

### III.

Movant raises five categories of objections: (1) prosecutorial misconduct; (2) judicial

bias; (3) unfair trial; (4) ineffective assistance of counsel; and (5) unreasonable and illegal sentence. Within each category he raises numerous specific objections.

**1. Prosecutorial Misconduct**

**a) Use of the term: "Ponzi scheme"**

Movant's first argument is that the failure of the superseding indictment to specify "Ponzi scheme" was prosecutorial misconduct. (Dkt. No. 30, at 39.) This failure does not render the indictment defective. For an indictment to be constitutional, two requirements must be met: "first, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (quoting *Hamling v. United States*, 418 U.S. 87 (1974)).

The superseding indictment clearly identified the elements of each charged offense and the corresponding statutory authority for each. (1:04-CR-165, Dkt. No. 108.) The term "Ponzi scheme" does not appear in the statutory language of any of the statutes which Movant was convicted of. (*Id.*) A "Ponzi scheme" is merely a lay-term used to describe a variety of fraud. Absence of the term from the indictment is irrelevant to its effectiveness. Thus Movant's argument is without merit.

Movant also appears to argue that the superseding indictment was constructively amended by a supplemental jury instruction. Movant argues that the alleged amendment

caused the jury to be confused with the term "Ponzi scheme" and the charges brought against him. A constructive amendment results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which modify essential elements of the offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment. *United States v. Siemaszko*, 612 F.3d 450, 469-70 (6th Cir. 2010) (citing *United States v. Kuehne*, 547 F.3d 667, 683-84 (6th Cir. 2008)). "To determine whether a constructive amendment has occurred . . . we review the language of the indictment, the evidence presented at trial, the jury instructions and the verdict forms utilized by the jury." *Kuehne*, 547 F.3d at 683-84.

In giving supplemental instructions, the Court must take care to refrain from adding to the confusion or prejudicing the defendant. *United States v. Nunez*, 889 F.2d 1564, 1569 (6th Cir. 1989). Supplemental instructions must be given in a way that will clear away the difficulties on a particular issue with accuracy and must be viewed in light of the entire trial and previous instructions. *See United States v. Lee*, 991 F.2d 343, 350 (6th Cir. 1993). Even a "misstatement in one part of the [jury] charge does not require reversal if elsewhere in the instruction the correct information is conveyed to the jury in a clear and concise manner." *United States v. Nelson*, 27 F.3d 199, 202 (6th Cir. 1994) (quoting *United States v. Pope*, 561 F.2d 663, 670 (6th Cir. 1977)).

The Court's instructions clearly and accurately reflected the counts in the indictment. (1:04-CR-165, Dkt. Nos. 470-78, 513-22). Because clear and accurate instructions had been

given, the Court's supplemental instructions were providing only the direction necessary to assist the jury in understanding the relevant law.  (*Id.*)  Movant's allegations of improper supplemental jury instructions represent conclusions rather than statements of fact and are not supported by the record or the exhibits.  (1:04-CR-165, Dkt. Nos. 470-78, 513-22.)

### b) Judicial estoppel

Movant alleges that judicial estoppel precludes the use of the term "Ponzi scheme" as a finding of fact at sentencing and at appeal.  Judicial estoppel provides that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).  Judicial estoppel's effect "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  *Id.* (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 (2000)).  The purpose of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *Id.* at 750 (citation omitted).

Movant appears to argue that the periodic use of the term "Ponzi scheme" during trial, its absence from jury instructions, and its use in sentencing proceedings violated the rule of judicial estoppel.  However, Movant misconstrues the legal significance of the term "Ponzi

scheme" and the legal principle of judicial estoppel. The term "Ponzi scheme" is merely a term-of-art used to describe a variety of fraud. Under judicial estoppel, the use, or non-use of the term "Ponzi scheme" is irrelevant; the issue is whether the Government took contradictory legal positions during the legal proceedings. Movant has cited nothing on the record or any exhibit indicating that the Government deviated from the legal theory that Movant committed mail fraud or money laundering, or conspiracy to commit mail fraud or money laundering. Accordingly, Movant's argument for judicial estoppel in support of his § 2255 motion is without merit.

### c) Indictment's omission of "failure to file" charges

Movant contends that the indictment violated his right to due process by failing to provide adequate notice that he was charged with a "failure to file" offense under the Tax Code rather than a *Klein* conspiracy, which misled him and allowed agents to testify falsely against him. However, the indictment fairly advised him of the conduct that supported the *Klein* conspiracy charge against him, including allegations of the failure to report various matters to the IRS, and it was for the jury to decide whether he did or did not do what the indictment alleged. Liberally construed, it appears that Movant claims a constructive amendment of the indictment or fatal variance occurred.

However, no constructive amendment of the indictment occurred through the jury instructions because the instructions correctly recited the elements of a *Klein* conspiracy to defraud the United States, pursuant to 18 U.S.C. § 371, as was charged in Count 42. (1:04-

CR-165, Dkt. No. 522, at 3770-71); *see also, e.g., United States v. Brandon*, 17 F.3d 409, 428 (1st Cir. 1994) (setting forth elements of a § 371 conspiracy to frustrate the functions of the IRS, also known as a *Klein* conspiracy). This Court did not instruct the jury that they could return a guilty verdict on Count 42 merely on a finding that Movant failed to file a tax return. Nor did the Court even instruct the jury that it had to find Movant failed to file a return. Rather, this Court correctly instructed on background law that "the filing of a return is not voluntary;" that is, a person cannot simply choose to not file a return when the person has gross income over a certain amount. (1:04-CR-165, Dkt. No. 522, at 3772.) Where, as here, there is virtually no chance that the jury could have convicted Movant of any offense other than that for which he was charged, there has not been a constructive amendment. *See United States v. Chilingirian*, 280 F.3d 704, 712 (6th Cir. 2002).

Nor was there a fatal variance. A variance occurs when a conviction is based on an offense which is not charged in the indictment. *United States v. Mahar*, 801 F.2d 1477, 1503 (6th Cir. 1986). Variances, even on direct review, will not result in reversal unless the "substantial rights" of the defendant have been affected. *United States v. Hathaway*, 798 F.2d 902, 911 (6th Cir. 1986). Substantial rights are affected only when a defendant proves prejudice to his ability to defend himself, to the overall fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions. *Id.* Finally, the burden of proof rests upon the defendant to prove that the variance is fatal. *United States v. Miller*, 471 U.S. 130, 138 n.5 (1985).

Here the government's proof at trial was consistent with the allegations in the indictment: that Movant conspired to "defeat the lawful functions of the Internal Revenue Service . . . in the collection of revenue" by engaging in such acts or omissions as "fail[ing] to report to the [IRS] the salaries and commissions they paid themselves," "fail[ing] to report . . . the monies . . . received . . . with which they paid personal expenses" and conducting transactions in a manner "so as to hide" funds "for the purpose of evading the payment of appropriate income taxes." (*See* 1:04-CR-165, Dkt. No. 108, at 26.)

As for Movant and his coconspirators failing to file tax returns, even if such acts or omissions were not fairly subsumed within these express terms of Count 42, "[i]t is axiomatic that all the overt acts in furtherance of a conspiracy need not be alleged in the indictment." *United States v. Henson*, 848 F.2d 1374, 1385 (6th Cir. 1988). Indeed, the failure to file tax returns more than qualifies as a sufficient "overt act" in furtherance of a *Klein* conspiracy to frustrate or defeat the function of the IRS where, as it was argued and proved here, the act or omission was for the purpose of and part of a broader scheme to defeat the lawful functions of the IRS by dishonest means, executed in conjunction with a money laundering operation, in which honest filings with the IRS might have disclosed the mail fraud (Ponzi) scheme the laundering was intended to hide. *See United States v. Williams*, 649 F.Supp. 1290, 1293-96 (M.D. Fla. 1986) (finding that failure to report income was part of larger scheme to evade taxes and avoid detection of profit skimming scheme) (citing *United States v. Enstam*, 622 F.2d 857 (5th Cir. 1980)); *United States v. Shermetaro*, 625 F.2d 104 (6th Cir.

1980) (finding a *Klein* conspiracy to frustrate IRS as part of effort to conceal Medicare kickback scheme). In light of the broad "failure to disclose" allegations in Count 42 and the related money laundering and mail fraud conduct specifically incorporated by reference into that Count, Movant cannot demonstrate prejudice to a substantial right warranting collateral relief.

Nevertheless, Movant argues that there was prejudice to a substantial right because the Government violated several internal IRS directives he claims are designed to make sure prosecutors do not "circumvent" congressional intent behind the availability of certain statutes. (Dkt. No. 11, at 48). However, while a defendant may in some circumstances claim relief in a criminal proceeding under an agency regulation designed to protect a constitutional right, *United States v. McKee*, 192 F.3d 535, 541 (6th Cir. 1999), a defendant has no substantive right to enforce an agency regulation designed merely to implement congressional intent behind a statute or, more likely in this case, to effect efficient agency enforcement of the tax laws. *See United States v. Pendergrass*, No. 3:06-00147, 2007 WL 596935, at *2 (M.D. Tenn. Feb. 21, 2007) (citing *United States v. Kontny*, 238 F.3d 815, 818 (7th Cir. 2001) (holding that the exclusionary rule does not apply to violation of IRS directives) and *United States v. Caceres*, 440 U.S. 741, 755 (1979) (holding that the defendant had no substantive right to enforce IRS regulations on obtaining consensual electronic surveillance because the Constitution did not require them)).

In any event, the directives identified here were neither violated nor material. Movant

claims he was charged contrary to agency directives which discourage the use of tax offenses as the predicate offenses for money laundering charges, discourage the charging of mail fraud and money laundering as a substitute for routine tax charges, and require that the Tax Division within the Department of Justice approve the bringing of certain charges. However, mail fraud and not any tax offense was the charged predicate for the money laundering in Movant's case. (*See* 1:04-CR-165, Dkt. No. 108, Counts 41 and 43-47 (re-alleging as support the mail fraud conduct and not re-alleging Count 42, the *Klein* conspiracy count).) Nor did mail fraud and money laundering substitute for routine tax offenses; rather, the indictment charges money laundering and mail fraud in addition to a *Klein* conspiracy count, in which Movant and his conspirators were alleged to have defrauded the United States by frustrating the lawful functions of the IRS. In any event, "[a] defendant may be charged with multiple offenses based on the same underlying conduct as long as each offense requires proof of an element not required by the other." *United States v. Kelly*, 204 F.3d 652, 656 (6th Cir. 2000). Finally, even if the process by which the Tax Division must approve tax charges was enforceable, there is no evidence that the Tax Division did not authorize the *Klein* conspiracy charge here.

### d) Jury Instructions on good-faith belief regarding church tax exemption

Movant's next ground supporting his § 2255 motion involves three arguments: (1) the Government violated his First Amendment right to the Free Exercise of Religion, (2) certain terms used by the Government during trial violated his right to due process, and (3) the jury

instructions' failure to address his good-faith belief in his alleged church's tax exemption violated his due process.

First, Movant argues that the Government improperly targeted his alleged church, which violated his First Amendment right to the Free Exercise of Religion. Movant's argument is not supported by the record, his motion, or any exhibits. Movant presents inferential conclusions rather than statements of fact to support his argument. Accordingly, Movant's argument is without merit.

Second, Movant argues that the Government's use of the terms "church chapter," "checkbook church," and "prime bank" violated his right to due process. These contentions are conclusions, unsupported by the record, his cited authority, or any exhibits. In addition, to sustain these evidentiary allegations of non-constitutional error, Movant must show a fundamental defect in the proceedings which resulted in a complete miscarriage of justice or an error so egregious that it results in a violation of due process. *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000). Movant's arguments fail to meet this standard and are without merit.

Third, Movant argues that he had a good-faith belief that his church was tax exempt under 26 U.S.C. §§ 501 and 508. Movant contends that he was engaging in what he thought was innocent conduct, and that the jury instructions' failure to address his good-faith belief about his church's tax exemption violated his right to due process. However, Movant raised no contemporaneous objection to this Court's instructions to the jury regarding §§ 501 and

508; in fact, he had little reason to object because this Court merely explained what those sections require (1:04-CR-165, Dkt. No. 522, at 3773), which was essential to evaluating any claim that he in good faith believed he complied with the law. Movant's failure to contemporaneously object to this Court's instruction addressing §§ 501 and 508 qualifies as a procedural default. *Frady*, 456 U.S. at 167-68; *Barajas-Diaz*, 313 F.3d at 1245. Because Movant does not show cause and actual prejudice, this claim is procedurally defaulted.

Even assuming his claim was not procedurally defaulted, the facts belie it. The Court did instruct the jury on the availability of a defense that a defendant had a good-faith belief that his or her conduct complied with the law's requirements. (1:04-CR-165, Dkt. No. 520, 3461-62; Dkt. No. 522, at 3762-63, 3766-67, 3773.) Moreover, the Court did so specifically in the context of §§ 501 and 508. (1:04-CR-165, Dkt. No. 522, at 3773.)

### e) Alleged tampering with exhibits

Movant's next ground in support of his § 2255 motion involves six unorganized arguments: (1) the prosecution knowingly presented false testimony, presented false evidence, withheld evidence, and tampered with evidence; (2) defense counsel was ineffective; (3) there was collusion between the Court and Government; (4) witness testimony was incredible; (5) the charges, as broadened by the superseding indictment, are barred by the 18 U.S.C. § 3282 statute of limitations; and (6) an "ex post facto" prohibition applies to his case.

First, Movant presents various arguments of prosecutorial misconduct. The allegations that prosecution knowingly presented false testimony, presented false evidence and withheld evidence represent conclusions rather than statements of fact. Neither the

record nor the authority cited by Movant supports those allegations. Movant also alleges that Government trial exhibits 1, 3, 31, and 33 were altered prior to presentation to the jury in a way that materially prejudiced him. First, this claim is procedurally defaulted because Movant failed to object to these exhibits at trial. He claims that co-defendant Janet Marcusse was unable to object because she was not permitted to cross-examine witnesses. However, this assertion is belied by the record[1] and does not excuse his failure to object.

In any case, Movant's complaints about the exhibits lack merit. With respect to Exhibit 1, Movant argues that an "incompetent witness" introduced the exhibit, paving the way for the government to put forward a theory that the product it advertised was the only product offered to customers, that it was "irrelevant" to some witness testimony, and that page numbers were added to it. Exhibit 1 was properly admitted during the testimony of one of the victim-investors who said that he saw the exhibit when he first learned about the program, although he did not enroll until much later. (1:04-CR-165, Dkt. No. 470, at 91-92.) He testified that Exhibit 1 was a booklet that the defendants gave him explaining the program. (*Id.* at 96.) He also testified that he received much of the same information conveyed in the exhibit orally from Marcusse, including that the program was endorsed by

---

[1]Prior to the testimony of the first witness, Marcusse, through her counsel, requested permission to proceed with "hybrid" representation whereby her attorney and she would each conduct direct and cross-examinations of witnesses. (1:04-CR-165, Dkt. No. 470, at 140.) In total, Marcusse cross-examined eighteen of the government's witnesses. (1:04-CR-165, Dkt. No. 473, at 805-11, 857-61; Dkt. No. 474, at 1010-25, 1100-04, 1164-66, 1316-21, 1540-456, 1590-94; Dkt. No. 477, at 1664-83; Dkt. No. 513, at 2038-2123; Dkt. No.515, at 2247-70, 2282-87, 2378-85; Dkt. No. 516, at 2464-65, 2472-75, 2489-95, 2509-14, 2532-36.).

the International Chamber of Commerce and the Federal Reserve (*id.* at 97) and that investment principal would be kept safe (*id.* at 99-100). He also recalled signing a non-disclosure agreement similar to the one contained in Exhibit 1. (*Id.* at 101-02.)

Many other witnesses testified about having seen the exhibit and its contents. (*E.g.*, Dkt. No. 472, at 412-13, 890-91; Dkt. No. 475, at 1197, 1335; Dkt. No. 477, at 1511, 1554.) At least two of these witnesses testified to having received the exhibit after 1998. (*See* Dkt. No. 472, at 412-13; Dkt. No. 475, at 1197-98.) Movant wholly fails to establish that Exhibit 1 was irrelevant or that it was tampered with. Moreover, the argument that page numbers were added to mislead the jury is without merit. The transcript reflects the fact that the page numbers were added to facilitate the examination of witnesses regarding the exhibit. (*See, e.g.*, Dkt. No. 470, at 97 ("I'd like to direct your attention to *what we've identified as Page 6* of this document.") (emphasis added).)

Movant's complaints about the other exhibits, Exhibits 3, 31, and 33, are likewise without merit. Movant claims that Exhibit 3 was misleading because at one point it was attached to Exhibit 33. But this document was admitted as both an attachment to Exhibit 33 and separately as Exhibit 3, and there was no error in doing so. He claims that Exhibit 31 is missing attachments, but there is no indication of that in the transcript and, in any event, he fails to show how this rendered the exhibit misleading or otherwise improper. His complaints about Exhibit 33 are similar – that it supposedly is missing attachments – but there is no indication in the transcript that any attachments were "removed."

15

Moreover, Movant has not shown that the admission of the challenged exhibits prejudiced him so as to excuse his procedural default or to establish the sort of "fundamental defect which inherently results in a complete miscarriage of justice" that warrants collateral relief.  *See Hill v. United States*, 368 U.S. 424, 428 (1962).

For the second argument, it is unclear whether Movant is asserting that his defense counsel or Marcusse's defense counsel was ineffective.  In any event, this claim fails because Movant's attorney was fully prepared. He reviewed all materials provided by the Government, including the Government's proposed exhibits, and he prepared for trial as though he had an active and participating client.    (Dkt. No. 34, Attach. C, Dunn Aff. at ¶¶ 8-9.)  He made every reasonable attempt to engage Movant in conversation and obtain Movant's viewpoint or perspective, but Movant consistently refused to communicate with him. (*Id.* at ¶¶ 10-11.)  In addition to Attorney Dunn's affidavit, there is ample evidence in the record reflecting Movant's obstinance. Moreover, Movant has failed to show that admission or use of the challenged exhibits was improper or that their admission was unfairly prejudicial.

Third, Movant argues that certain witness and evidentiary rulings made by the Court should be inferred to indicate collusion between the Court and the Government.  These allegations are merely conclusory statements unsupported by the record or exhibits.  (1:04-CR-165, Dkt. Nos. 470-78, 513-22.)  Movant's argument regarding Court and Government collusion is without merit.

Fourth, Movant argues that certain witness testimony was not credible. Courts are generally precluded from independently assessing the credibility of witnesses. *United States v. Gessa*, 57 F.3d 493, 496 (6th Cir. 1995) (holding "[t]he appellate courts generally do not review the district court's determinations regarding witness credibility"). In a jury trial, the jury is the sole fact finder, *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir. 1984), and issues of witness credibility are "within the 'special province' of the factfinder." *Wright v. Florida*, 474 U.S. 1094 (1986) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 856 (1982)). Review of witness credibility is not within the province of this Court and is not proper under a § 2255 motion. *See* 28 U.S.C. § 2255(a). Accordingly, Movant's argument that witness testimony was not sufficiently credible to sustain his conviction is without merit.

Fifth, Movant argues that the superseding indictment broadens the charges of the original indictment, and those broadened charges are barred by the statute of limitations under 18. U.S.C. § 3282. Section 3282(a) states that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a). Movant contends that the new charges brought in the superseding indictment, filed October 27, 2004 are barred by this five-year limitation period. (1:04-CR-165, Dkt. No. 108.)

Once an indictment is brought, the statute of limitations does not further run to the charges in that indictment. *United States v. Smith*, 197 F.3d 225, 227 (6th. Cir. 1999)

(citation omitted). The limitations period begins to run on the date of the "last overt act in furtherance of the conspiracy alleged in the indictment." *Id.* at 228; *see also Pinkerton v. United States*, 145 F.2d 252 (5th Cir. 1944)). The record clearly shows that in 2001 and into 2002, the conspirators were committing overt acts to further the crimes outlined in the superseding indictment. (1:04-CR-165, Dkt. Nos. 108, 470-78, 513-522.) The superseding indictment was filed in October of 2004, less than four years after the overt acts documented in 2001 and 2002. Moreover, the superseding indictment alleges that the conspiracy continued until the date of the superseding indictment, October 27, 2004. Accordingly, Movant's argument that the superseding indictment is barred by the statute of limitations is without merit.

Sixth, Movant argues that the Ex Post Facto provision of the U.S. Constitution applies to his case. U.S. CONST. art. I, § 10, cl. 1. This provision "forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (internal quotation marks and citation omitted). This argument is another conclusion which is not supported by the record, exhibits or the cited legal authority, and is without merit.

### f) Joinder with co-defendants, Diane and Wesley Boss

Next, Movant makes two separate arguments: (1) the evidence was not sufficient to sustain the conviction in that it was insufficient to show that Movant and Diane and Wesley

Boss (the "Bosses") engaged in the same offenses or had an agreement, and (2) the Bosses being made co-defendants and their guilty pleading materially prejudiced Movant.

The first argument is without merit because it is another bare conclusion that is unsupported by the record. (1:04-CR-165, Dkt. Nos. 108, 470-78, 481, 513-22). Further, Movant cites no exhibits or authority to support his claim. The second argument is procedurally barred and, in any case, lacks merit.

To the extent that Movant argues that initial joinder with the Bosses was improper under Federal Rule of Criminal Procedure 8(b), the argument is procedurally defaulted because Movant did not move for severance prior to trial nor at any point in the trial proceedings. Rule 12(b)(5) requires that a defendant move for severance prior to trial or the issue is waived. Fed. R. Crim. P. 12(b)(5). Such a motion would have lacked merit in any event. As a general rule, parties that are jointly indicted should be tried together, particularly when the indictment charges conspiracy. *United States v. Weiner*, 988 F.2d 629 (6th Cir. 1993). Additionally, joinder is proper where there is overlapping proof. *See United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987). Movant and the Bosses were charged in three conspiracy counts and all of the proof against them overlapped. Thus, initial joinder was proper.

Moreover, although Movant explicitly addresses misjoinder, the thrust of her argument appears to be that joinder with the Bosses was prejudicial. That argument, too, is procedurally defaulted. Prejudicial joinder is distinct from a claim of misjoinder and should

be analyzed under Rule 14. *See United States v. Williams*, 711 F.2d 748, 750 (6th Cir. 1983). Similar to claims of misjoinder, Rule 12(b)(5) requires that motions for severance based upon prejudicial joinder be raised pre-trial. The claim is procedurally barred, as Movant failed to raise the issue during the trial proceedings and has thus waived the issue. *See United States v. Beaver*, No. 97-2224, 2000 WL 491538, at *2 (6th Cir. April 20, 2000). He has not shown good cause for his failure to raise the issue, and pointing to the Bosses' motion for severance does not retrospectively preserve the motion on his part. *See United States v. Ghazaleh*, 58 F.3d 240, 243 (6th Cir. 1995).

Even if the issue were not procedurally barred, it lacks merit. Strong public policy favors joinder, and therefore severance is appropriate only where the trial rights of the defendant are implicated, or where joinder would "prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Breinig*, 70 F.3d 850, 853 (6th Cir. 1995) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). The jury is presumed to be capable of sifting through evidence and considering the cases of each defendant separately. *United States v. Cobleigh*, 75 F.3d 242, 248 (6th Cir. 1996) (citing *United States v. Moore*, 917 F.2d 215, 222 (6th Cir. 1990)). It is the defendant's burden to show that there was specific and compelling prejudice that might confuse the jury. *Id.* Movant's argument that testimony concerning the Bosses' spending practices created a risk of spillover prejudice lacks merit because allegations of spillover prejudice are inadequate to show that jury confusion occurred. *See, e.g., United States v. Medina*, 992 F.2d 573, (6th Cir. 1993); *Swift*,

809 F.2d at 323.

Finally, Movant posits that he was prejudiced when the Bosses pleaded guilty mid-trial. The Sixth Circuit has held that mid-trial guilty pleas do not present the requisite level of prejudice. *United States v. Dean*, 861 F.2d 722 (6th Cir. 1988) (holding that mistrial is not warranted when a co-defendant pleads guilty and testifies); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985) (holding that severance is not warranted when a co-defendant pleads mid-trial and delivers damaging testimony). The jury in this case was never told that the Bosses had pleaded guilty, and it was given an instruction not to draw conclusions from their absence. (1:04-CR-165, Dkt. No. 476, at 1406.) Such instructions are appropriately given to jurors. *See, e.g., United States v. Phillips*, 640 F.2d 87 (7th Cir. 1981); *United States v. Barrientos*, 758 F.2d 1152 (7th Cir. 1985). Thus, the Bosses' mid-trial pleas did not result in specific and compelling prejudice to Movant.

### g) Miscellaneous theories of prosecutorial misconduct and court bias

Movant argues that the First, Fourth, Fifth, and Sixth Amendments, the Ex Post Facto Prohibitions, and Equal Protection under the Law were violated because pretrial pleadings were improperly contrived, used to extend the length of the conspiracy, to delay the trial, to engage in malicious, selective, and retaliatory prosecution, to cause prejudice in front of the jury, and to increase sentences. These arguments require incredible inferences to be made before even a tenuous amount of support can be gleaned from the record or exhibits. The conclusive allegations Movant asserts are simply not supported by the record, motion, or

exhibits, and are without merit. (*See* 1:04-CR-165, Dkt. Nos. 470-78, 513-22.)

**h) Crawford "investment"**

Next, Movant alleges that no evidence existed on the record to support the conclusion that the "Crawford Ltd." contracts were illegitimate. Movant further contends that the government's reference to the Crawford Ltd. contracts as a fraud scheme materially prejudiced him. This claim is without merit and is comprised of conclusions rather than statements of fact. Movant's allegation that no evidence supports the position that "Crawford Ltd." was an illegitimate contract is not supported by the record, and is in fact contradicted by the record. (1:04-CR-165, Dkt. Nos. 518-22.) Additionally, Movant presents no evidence to demonstrate that the Government's references to the Crawford Ltd. contract materially prejudiced him in a way that meets a § 2255 motion's requirements for viability. Movant additionally claims certain testimony and government exhibits "substantially prejudiced" him. Movant's claim that the testimony and exhibits were improper or illegal are conclusions and are not supported by his motion, exhibits or the record.

**I) Fraud during closing arguments**

Movant alleges prosecutorial misconduct occurred during closing arguments which violated his right to due process. Movant is not entitled to collateral relief on this claim. First, this claim is procedurally defaulted because neither Movant nor his trial counsel made any objections during the government's closing argument. Moreover, given the significant evidence against Movant, he could not establish actual prejudice, as necessary to cure the

default.

Movant argues that the prosecutor lied to the jury and behaved fraudulently in various ways, such as by making improper suggestions, lying about exhibits, and using the term "Ponzi scheme." These are general, conclusory allegations, which are unsupported by the record or his motion. (*See* 1:04-CR-165, Dkt. No. 520.) Movant also alleges that the prosecution called co-defendants Flynn and Marcusse liars during closing arguments. This argument lacks merit because the prosecutor did not call Movant himself a liar. Moreover, the prosecutor's comments were not flagrantly improper. A conviction will not be reversed based on a prosecutor's comments during closing argument unless the comments are both "improper" and "flagrant." *United States v. Rose*, 522 F.3d 710, 715-16 (6th Cir. 2008); *United States v. Carroll*, 26 F.3d 1380, 1386 (6th Cir. 1994). Four factors are considered in determining flagrancy: (1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally placed before the jury; and (4) the total strength of the evidence against the accused. *Rose*, 522 F.3d at 716 (2008). If the comments were not flagrant, reversal is only warranted if a reviewing court determines that: (1) the proof of the defendant's guilt is not overwhelming; (2) the defense counsel objected; and (3) the trial court failed to cure the impropriety by failing to admonish the jury." *United States v. Trujillo*, 376 F.3d 593, 613 (6th Cir. 2004). Where there is no objection at trial, the defendant must overcome the additional hurdle of plain error review.

In this case, each time the prosecution alleged that one of the co-defendants was a liar, they supported it with references to the evidence presented. Reviewing the record, the evidence presented at trial provided support for the prosecuting attorney to make such comments. Moreover, proof of Movant's guilt was overwhelming. Thus, none of the prosecuting attorney's comments were improper or flagrant, and Movant's claim is without merit.

### j) Fraud during the appeal

Next Movant contends that the prosecutors made material misrepresentations to the Sixth Circuit on appeal, denying him the due process of law. Movant's arguments regarding prosecutor fraud, interference, and harassment are conclusions rather than statements of fact. They are not supported by the record, his motion, or exhibits, and are actually contradicted by the record. Accordingly, these arguments are without merit.

### k) Concurrent Sentencing Doctrine

Movant also alleges that prosecutors engaged in a scam to prevent consideration of a substantive challenge to his conviction on appeal. He alleges this scam in connection with a government petition seeking remission of the $5,700 special assessment imposed by the Court as part of his sentence. His allegation is that this remission provided an excuse for the Sixth Circuit to decline to hear his challenge under the "concurrent sentencing doctrine." Under this doctrine, an appellate court may refrain from addressing challenges to a conviction where the sentence imposed for the conviction is fully concurrent with another

sentence. *See United States v. Ware*, 282 F.3d 902, 906 (6th Cir. 2002).

This claim is without merit. There is nothing on the record that indicates the court of appeals was aware of the remission or otherwise failed to address any of Movant's arguments under the concurrent sentencing doctrine.

## 2. Judicial Bias

### a) Trial judge bias

Movant contends that the Court's bias combined with the Court's failure to recuse itself violated his right to due process. Under 28 U.S.C. § 455, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The purpose of this provision is to "promote public confidence in the integrity of the judicial process." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859 (1988). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)). Movant alleges that the Court publicly compared "tax protestors" to mass murderers, terrorists, and white supremacists. Movant alleges that these comparisons combined with certain rulings made by the Court during the trial proceedings indicate impermissible bias.

These allegations represent a false invention by Movant and are not supported by the record, his motion, or the exhibits. The Court is quoted as saying "[i]t all started with these tax protestors." (Dkt. No. 30, at 93.) This quote appeared in the Grand Rapids Press, March

5, 2005, and regarded the murder of a Chicago area judge's husband and mother.

Movant has failed to produce any authority to demonstrate that the Court's isolated comment was evidence of Court bias which prejudiced Movant. Additionally, Movant's allegation that Court rulings made during the trial proceedings were a result of Court bias against tax protestors is not supported by Movant's motion, any attached exhibits, or the record. Neither the public statement made by the Court nor the judicial rulings during the trial could create grounds to reasonably question the impartiality of the Court. Nor does anything in Movant's separate "Memorandum in Support of Motion to Disqualify Judge" support his allegations. (*See* Dkt. No. 16.) Accordingly, Movant's argument of judicial bias is without merit, as is Movant's motion to disqualify the Judge (Dkt. No. 15).

**b) Trial procedures resembled those used for enemy combatants**

Next Movant compares the trial proceedings to certain military tribunal proceedings, which were held to be unconstitutional by *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004). This argument is frivolous. There is nothing on the record that could support the argument that Movant's trial had any resemblance to the procedures outlined in *Hamdi*. Movant's argument is without merit.

**c) Separation of powers violations**

Movant also alleges that separation of powers violations – particularly the Judge's refusal to put his oath of office on the record – require his release. This is another frivolous

argument. It is unfounded and not supported by the record, motion, or exhibits.

**d) Arbitrary judicial construction of language**

Movant alleges that the Court improperly disregarded the definition of "investment contract" provided in *SEC v. Howey*, 328 U.S. 293, 298-99 (1946), in order to indulge the fraudulent charges of a "Ponzi scheme." To prevail on a § 2255 motion, Movant must demonstrate an error of constitutional magnitude or a fundamental defect which inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process. *Humphress*, 398 F.3d at 858 (citation omitted); *Watson*, 165 F.3d at 488 (citation omitted). Movant has failed to demonstrate how the Court's use of the term "investment contract" prejudiced Movant in a way that implicates his constitutional rights. Movant's argument consists of conclusions that require incredible inferences before support can be attributed to the exhibits and trial records Movant cites. Accordingly, Movant's argument is without merit.

**e) Court of appeals bias and fraud**

Movant argues that the Sixth Circuit's refusal to consider the claims in co-defendant Marcusse's pro se brief was evidence of bias and fraud. First, Movant has no standing to raise this argument because he did not properly join Marcusse's pro se brief. Second, to the extent Movant is permitted to "piggyback" onto Marcusse's claims, the court of appeals' failure to consider the pro se arguments of a represented party is not evidence of bias or fraud.

Although the Sixth Circuit occasionally permits the filing of pro se briefs in addition to briefs by that party's counsel, there is no constitutional right to such "hybrid representation" on appeal, and the general rule is that the appellate court does not consider such pro se briefs. *See, e.g., United States v. Williams*, 641 F.3d 758, 770 (6th Cir. 2011) ("because Williams was represented by counsel on this appeal, we decline to address these pro se arguments) (citing *United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009)). Thus, whether or not the court of appeals considered Marcusse's pro se arguments in her direct appeal, neither her nor Movant's constitutional rights were violated.

### 3. Unfair Trial

#### a) Charges fraudulently patterned after Chicago case

Movant alleges that the charges in his case were invented and fabricated, with the government lifting its "script" from *United States v. Polichemi*, 201 F.3d 858 (7th Cir. 2000). Movant argues that because elements of *Polichemi* were also present in his case, it should be inferred that the government patterned its case after that one. Movant further argues that it should be inferred that the government lied, tampered with evidence, and colluded with the Court so that Movant's case would parallel *Polichemi* and a guilty verdict would be ensured. Because these allegations are contradicted by the record, are inherently incredible, and are conclusions rather than statements of fact, Movant's argument is without merit. *See Valentine*, 488 F.3d at 333.

Movant also alleges that Marcusse was not allowed to see the government's records

and "virtually all" of Marcusse's evidence was suppressed, causing guilty verdicts for all of the defendants. This argument is wholly without merit. The trial record clearly indicates that Marcusse had access to all of the government's records which were used to generate exhibits. (1:04-CR-165, Dkt. No. 478, at 1989-90; Dkt. No. 518, at 3048.)

As for the alleged suppression of evidence, Movant appears to be arguing that the Court improperly denied subpoenas for bank records that Marcusse sought. On the eve of trial, Marcusse filed a pro se letter directed to the Clerk of the Court with a bare-bones request for subpoenas seeking bank records from three accounts, two purportedly at the Royal Bank of Scotland (Starbright Mgmt Ltd. and City Centre Management Ltd.), and one at Union Planters Bank (MLC Developments Int'l Inc.). (1:04-CR-165, Dkt. No. 333.) The Court denied the motion because it would require the Court "to subpoena the individual responsible for keeping such records at the respective banks," and Marcusse had wholly failed to show that the subpoena expense was necessary for her to present an adequate defense, as required by Federal Rule of Criminal Procedure 17(b). (1:04-CR-165, Dkt. No. 342.) This ruling was manifestly correct, as Marcusse failed to make any showing of necessity.

Movant appears to be arguing that the records would have somehow validated the claim that Marcusse invested money for the benefit of the investors. But the Government did not generally contest that fact. (1:04-CR-165, Dkt. No. 520, at 3373-75.) That fact – and the "bank records" that may or may not have supported it – was irrelevant, as the Court tried to

explain (1:04-CR-165, Dkt. No. 470, at 8-9), and as the court of appeals agreed in affirming the Court's decision to deny Marcusse's request for other subpoenas to witnesses who would have testified about the collateral "Branson project." *See United States v. Flynn*, 265 F. App'x 434, 446 (6th Cir. 2008) (finding that the individuals "were involved in matters collateral to the Access scheme and their testimony was not necessary to Marcusse's defense").

Thus Movant is not entitled to collateral relief on this or any other claim premised on an alleged denial of "bank records." Marcusse had access to every bank record the Government had, and she did not set forth an adequate basis for procuring additional records at public expense.

### b) "Good faith" defense denied

Movant alleges he was denied a good-faith defense based on the Court's failure to require certain witnesses to testify. (Dkt. No. 30, at 124.) All of Movant's arguments center on witnesses Marcusse sought to present, and how they affected Marcusse's case. In any case, these arguments are without merit and would not entitle either Marcusse or Movant to relief.

First, Movant argues that the Court did not require Richard Gerry and James Kramer-Wilt to testify. The record shows that after discussion between the Court, defense, and Government, it was determined that Gerry's presence would have had a negative effect on Movant's case, and thus Gerry was released from his subpoena. (1:04-CR- 165, Dkt. No.

514, at 2219-23.)

As for Kramer-Wilt, Movant's argument that Marcusse, in good-faith, relied on representations made by him is irrelevant to Movant's case. The indictment brought against Movant and Marcusse charged them with making fraudulent representations to investors. (1:04-CR-165, Dkt. Nos. 108, 470, at 8-20). Whether or not Movant or Marcusse was deceived by third parties was a collateral matter, and irrelevant to the charges brought against them. *Id.* Additionally, Movant's assertions of what Kramer-Wilt's presence would have accomplished for him and Marcusse are purely speculative and conclusive. Accordingly, Movant's argument is without merit.

Movant further argues that Marcusse's and his own "good-faith reliance" on representations made by Gerard Forrester was a viable defense and that denial of letters allegedly written by Forrester from evidence improperly prejudiced their case. Mr. Forrester is alleged to be a FBI Agent. Forrester's purported letters, which Movant claims Marcusse relied on, state that a certain bank located in the Bahamas was a legitimate banking institution. Although it is unclear from the record whether Forrester even exists, or if the alleged letters can be authenticated, this argument does not rise to the magnitude necessary to be cognizable under a § 2255 motion.

Even if Movant's claim is presumed true, it fails to establish an error of constitutional magnitude or an error which resulted in a complete miscarriage of justice so egregious that it amounts to a violation of due process. *Humphress*, 398 F.3d at 858 (citation omitted);

*Watson*, 165 F.3d at 488 (citation omitted). If the Court accepts that Forrester exists and accepts that the letter is authentic, it only states that a certain bank located in the Bahamas appears to be a legitimate banking institution. (1:04-CR-165, Dkt. No. 392, Ex. 4.) This would have no effect on Movant's case. The letter does not indicate that the bank's investments matched the investments Movant described to investors. Further, Movant's argument for "good-faith reliance" regards only the collateral matter of whether Movant was defrauded by a third-party. Accordingly, Movant's argument is without merit.

### c) Twenty witnesses were denied

Movant also argues that Marcusse was denied twenty witnesses. Once again, his argument rests solely on the Court's alleged actions against his co-defendant and not against him. Neither Movant nor his counsel sought to have any of these witnesses testify, and neither of them objected to the Court's denial of Marcusse's request to subpoena them. Thus, this claim is procedurally defaulted. Even if Movant could piggyback on Marcusse's right to bring such a claim, the claim is without merit.

The claim that the subpoenas should have been granted is largely barred by the rule against relitigation. "A § 2255 motion may not be used to relitigate an issue that was raised on [direct] appeal absent highly exceptional circumstances." *Dupont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996) (citing *United States v. Brown*, 62 F.3d 1418 (6th Cir. 1995). After trial began, Marcusse initially filed an ex parte request for 30 subpoenas for witnesses at government expense pursuant to Federal Rule of Criminal Procedure 17(b),

including Attorney General John Ashcroft, Federal Reserve Chairman Alan Greenspan, and other federal officials. (1:04-CR-165, Dkt. Nos. 379, 384.) The Court denied this request. Subsequently, Marcusse submitted another request listing 26 potential witnesses, and included a summary of each witness's anticipated testimony. (1:04-CR-165, Dkt. No. 392.) The Court granted the request with respect to 14 of the proposed witnesses, and denied the request with respect to the remaining 12, specifically giving reasons for the denials (mostly on the ground that the proposed testimony of the witness was irrelevant and/or cumulative). (1:04-CR-165, Dkt. No. 401.)

At trial, Marcusse renewed her request only as to three witnesses: Reede Hubert, Ed Terlesky, and Richard Williams. (1:04-CR-165, Dkt. No. 514, at 2222.) Marcusse's appellate counsel challenged the Court's denial of subpoenas to those three witnesses in her direct appeal, and the court of appeals rejected that claim: "the court correctly concluded that, inasmuch as these individuals were involved in matters collateral to the Access scheme at issue in this case, their testimony was not necessary to Marcusse's defense." 265 F. App'x at 446. Williams did, in fact, testify, and the court of appeals held that his testimony, which related to the so-called "Branson project," confirmed the collateral nature of the witnesses' proposed testimony. *See id.* Thus, this argument is barred by the relitigation doctrine as to the three witnesses directly addressed in the court of appeals' opinion.

Movant's claim as it relates to the remaining witnesses—if deemed preserved and not encompassed by the court of appeals' ruling—is meritless. Rule 17(b) allows a court to issue

subpoenas for indigent defendants if the defendant shows "the necessity of the witnesses' presence for an adequate defense." The court is to consider the timeliness of the request, materiality, relevance, and cumulativeness of the testimony. *United States v. Moore*, 917 F.2d 215, 230-31 (6th Cir. 1990); *see also United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 & n.7 (1982) (noting that Rule 17(b) limitations track scope of Sixth Amendment right to secure witnesses in favor of defendant, which applies only where testimony would have been relevant, material, and vital to the defense). The trial court is granted wide discretion to ensure that the requests are specific and clearly articulate the necessity, and to ensure the process is not being subject to abuse from a defendant's inappropriate requests for witnesses. *United States v. Rigdon*, 459 F.2d 379, 380 (6th Cir. 1972). General assertions of topics the witness may cover do not meet this test. *Id.*; *United States v. Conder*, 423 F.2d 904, 909 (6th Cir. 1970); *United States v. Barker*, 553 F.2d 1013, 1020-21 (6th Cir. 1977). Even on direct appeal, an appellate court will not reverse a district court's denial of a subpoena unless "exceptional circumstances" indicate that the defendant's "right to a complete, fair and adequate trial is jeopardized." *United States v. Moore*, 917 F.2d 215, 230 (6th Cir. 1990). *See also United States v. Blackwell*, 459 F.3d 739, 752 (6th Cir. 2006) ("'[T]he Constitution permits judges to exclude evidence that is repetitive . . . only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues.'")

Applying this standard – and the court of appeals' ruling that denial of subpoenas for witnesses whose testimony would relate to collateral matters such as how or why certain

"investments" Marcusse purportedly made (e.g., the MLC Branson project, or the Bahamas CD) failed – it is manifest that no constitutional error occurred.

### d) A meaningful defense on tax allegations was denied

Next Movant argues that he was denied a meaningful defense when Marcusse was allegedly denied the opportunity to introduce case law and statutes into evidence. Once again, this claim focuses on Marcusse.

On the merits, the Court's order did not actually preclude Marcusse from offering statutes or case law or excerpts thereof in support of a claim that she in good-faith believed she was complying with the requirements of the law. Rather, the Court simply ordered, consistent with Sixth Circuit precedent, that defendant could not ask the jury to decide whether she was correct in her belief that her conduct complied with the law. (1:04-CR-165, Dkt. No. 338, at 3-4). *See United States v. Wunder*, 919 F.2d 34, 35 (6th Cir. 1990). That would be a question of law that is not for a jury to decide. *Id.* The Court was aware that it had the discretion to permit the defendants to introduce some documentary evidence (such as excerpts of materials) that defendants may claim supported their good faith; accordingly, the Court deferred ruling on any particular exhibit the defense might offer at trial until the Court had an opportunity to review it to assess it for relevancy and likelihood of confusion. (1:04-CR-165, Dkt. No. 338, at 8). However, Movant cites no statute or judicial decision or excerpt thereof that the Court refused to allow Marcusse to show the jury. Thus Movant's claim is without merit.

### e) FBI 302s

Next, Movant alleges that FBI 302s which were withheld prove Agent Flink lied under oath. This claim is not supported by the record, his motion, or the exhibits. The Government disclosed *Jencks* and *Brady* material, and FBI 302s, before trial began. Prior to the final pretrial conference, the Government filed a motion agreeing that prior to the trial, "the Government will provide a copy, in advance, of not only '*Jencks*' material but also agency reports of interviews (FBI Form 302's and IRS Memorandum of Interview 'MOI's') which have not been adopted or reviewed by the witness and are thus not '*Jencks*' materials and not subject to disclosure . . . ." (1:04-CR-165, Dkt. No. 275, at 1.) Citing a concern that "further copying or dissemination of these materials could endanger or harass Government witnesses, chill future sources of information, and constitute unwarranted disclosure of grand jury and Government information," the Government requested that the Court order that the early release of the materials be subject to the restriction that copies distributed to pro se defendants be made in open court and remain at all times in the courtroom. (*Id.* at 2.) The Court granted this request, but further required that standby counsel be given access to the materials as well. (1:04-CR-165, Dkt. No. 288.) Movant has not shown that any FBI 302s were withheld.

Moreover, Movant has no viable *Brady* claim based on any of the allegedly withheld documents. To establish a *Brady* violation, a defendant has the burden of showing that the Government suppressed evidence, that such evidence was favorable to the defense, and that

the suppressed evidence was material. *United States v. Warshak*, 631 F.3d 266, 300 (6th Cir. 2010). "[C]onclusory" or "purely speculative" allegations, however, cannot support a *Brady* claim. *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000). Movant contends that Agent Flink lied when he claimed that he did not know MLC was an investment. Agent Flink, however, testified that money was paid to MLC, but that it was a different program, with different investors, and he did not investigate it. (1:04-CR-165, Dkt. No. 513, at 2057.) The fact that people mentioned MLC in some of the FBI reports has no relevance to Flink's testimony or the substantial proof underlying Movant's convictions.

### f) Tampering with GX-1

Next, Movant argues that the prosecutors tampered with Government Exhibit 1. In this section of his brief, Movant merely repeats the same baseless allegations already addressed in Part 1(e).

### g) Lack of Jurisdiction

Next, Movant alleges that the Court lacked jurisdiction over him due to his "kidnapping" from Mexico. As with many of Movant's claims, this claim is procedurally defaulted because he did not raise this claim on direct appeal. However, to the extent this claim is considered "jurisdictional," it is not subject to the procedural default rule. *See, e.g.*, *United States v. Alford*, Nos. 3:00cr065, 3:06cv047, 2008 WL 299060, at *7 (S.D. Ohio Feb. 1, 2008).

Movant argues that the district court lacked jurisdiction because the arrest warrant

used to arrest and extradite him from Mexico charged the crime of "conspiracy to distribute five kilograms or more of cocaine." This claim lacks merit because he was not arrested based on a drug trafficking charge and he was not "extradited" from Mexico. Throughout the trial, Movant maintained that he was improperly kidnapped from Mexico, in the sense that no extradition hearing was held and a document associated with his arrest contained incorrect information. (*See, e.g.*, 1:04-CR-165, Dkt. No. 470, at 20-25.) In fact, the record reflects that Movant was deported from Mexico as unwanted in that country, in that he is not a citizen of Mexico and there was an indictment charging him with the financial crimes at issue in this case. (*Id.* at 21-23; 1:04-CR-165, Dkt. No. 477, at 1657.) The Government acknowledged at trial that someone made a handwritten clerical error on the Rule 5 commitment order transferring him from California to Michigan indicating that the charges involved drug trafficking. (1:04-CR-165, Dkt. No. 470, at 22-23.) However, the commitment order itself, the indictment, and all other documents associated with the Rule 5 transfer proceedings correctly identified this as a mail fraud conspiracy case. (*Id.* at 23; 1:04-CV-165, Dkt. No. 177, Rule 5 Docs.)

**h) Jury instructions**

There are four arguments within Movant's claim: (1) Movant was improperly prejudiced by the use of the term "Ponzi scheme" during trial and its absence in the jury instructions; (2) Movant was improperly prejudiced by the Court's highlighting of evidence and the Court's citation of government exhibits for each corresponding count on the verdict

form; (3) the jury instructions for the terms "gross income" and "exempt church organization" were improper; and (4) Movant's right to due process was violated when the indictment charged him with conspiracy against the IRS for failure to file.

First, Movant argues that the use of the term "Ponzi scheme" during the trial combined with its non-use in the jury instructions improperly prejudiced him. As previously discussed in Part 1(a), this argument is without merit.

Second, Movant argues that it was improper for the Court to highlight evidence and to cite the government exhibits that corresponded to each count on the verdict form. Movant essentially contends that the Court was biased against him and his co-defendants and usurped the role of the jury when it "tie[d]" the government's proffered evidence to counts in the indictment during instructions to the jury.

However, the Sixth Circuit recognizes that:

> [T]he judge in a criminal trial "is more than a mere arbiter to rule upon objections and to instruct the jury." Rather, the trial court has the responsibility of assuring "that the issues are not obscured and that the testimony is not misunderstood." The court may therefore "interject itself into the proceedings when necessary to clear up confusion in the evidence or to supplement, in an impartial fashion, the presentation . . . ."

*United States v. Hynes*, 467 F.3d 951, 958 (6th Cir. 2006) (internal citations omitted). The three factors to consider in evaluating whether a court has so overstepped its role as to bias the case before the jury are: (1) "the nature of the issues at trial," such as whether the trial was "lengthy" or "complex;" (2) the "conduct of counsel," such as where counsel was "unprepared or obstreperous" or "the facts are becoming muddled;" and (3) whether conduct

39

of the witnesses was confusing the record in a manner the court could correct. *Id.*

Here, Movant fails to show any error under these factors. The Court, in a neutral fashion, simply facilitated the orderly presentation of proofs in a long and complex case in which pro se representation had a tendency to result in a muddling of the issues. Even if the Court overstepped its bounds, Movant cannot show he was prejudiced, as the evidence of his guilt was substantial.

Third, Movant argues that the jury instructions for "gross income" and "exempt church organization" were improper. Movant notes that the counsel of one of his co-defendants sought clarification of the definition of "gross income" through an instruction that "gross income does not include loans, gifts, or monies received to be transferred at another's direction," but that the Court declined to follow this proposed instruction. As for "exempt church organization," Movant also argues that his counsel failed to object to the Court's statement that, for a church to qualify for tax exemption, "no part of its earnings [may] inur[e] to the benefit of any one individual."

On federal habeas corpus review, a constitutional error that implicates trial procedures shall be considered harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). If the Court is sure that the error had no or very slight effect or influence on the jury's decision, the verdict and judgment must stand. *O'Neal v. McAninch*, 513 U.S. 432, 436-38 (1995). To warrant habeas relief because of incorrect jury instructions, a petitioner must show that the

instructions, as a whole, were so infirm that they rendered the entire trial fundamentally unfair. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

Here, Movant cannot show that the jury instructions for "gross income" and "exempt church organization" resulted in constitutional error, let alone prejudiced him or resulted in an unfair trial. Because Movant cannot establish prejudice, he also cannot establish an ineffective assistance of counsel claim for his attorney's failure to object to the Court's statement concerning when churches qualify for tax exemptions. Thus, his claims regarding "gross income" and "exempt church organization" are without merit.

Fourth, Movant argues that the jury instructions were erroneous for their inclusion of a "failure to file" offense. In this section of his brief, Movant merely repeats the same baseless allegations already addressed in Part 1(c).

### i) Tampering with GX-33

Next, Movant argues that the prosecutors tampered with Government Exhibit 33. In this section of his brief, Movant merely repeats the same baseless allegations already addressed in Part 1(e). To the extent Movant is attempting to claim that Marcusse's receipt of documents in her tax court litigation is "new evidence" that supports his claim of document tampering, the claim wholly lacks merit.

### 4. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are analyzed under the two-prong standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show

that counsel's performance fell below an objective standard of reasonableness. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that there is a reasonable probability that, but for counsel's deficiency, the outcome of the proceedings would have been different. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial (i.e. a trial whose result is reliable). Unless a defendant makes both showings, it cannot be said that the "conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 694.

When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. The proper measure of attorney performance simply remains reasonableness under prevailing professional norms. *Id.* Thus, in any case presenting an ineffectiveness claim, the performance inquiry rests on whether counsel's assistance was reasonable considering all of the circumstances. *Id.* Such a review of counsel's performance must be highly deferential and requires the Court to "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

Movant has not established either *Strickland* prong. The Court notes that Movant

refused to talk to Attorney Dunn or provide any assistance. This is established by Attorney Dunn's affidavit. (Dkt. No. 34, Attach. C, Dunn Aff. at ¶¶ 7, 10-13.) It is also established throughout the transcript of the trial. (1:04-CR-165, Dkt. No. 471, at 185, 370-71; Dkt. No. 472, at 615-16; Dkt. No. 474, at 1172; Dkt. No. 516, at 2425, 2427-28; Dkt. No. 521, at 3680-81.) The Sixth Circuit has observed that "*Strickland*, the foundational [ineffective assistance of counsel] case, emphasized that '[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic decisions made by the defendant and on information supplied by the defendant.'" *Owens v. Guida*, 549 F.3d 399, 412 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 691). Thus, the Sixth Circuit held in *Owens* that the defendant's counsel's performance was not deficient for failing to conduct additional investigation into mitigating evidence where the defendant herself had "shut off avenues for mitigation." *Id.* The court cited other cases where the Sixth Circuit and the Supreme Court have refused to find deficient performance where a defense attorney's failure to present evidence is the result of the defendant's own actions and "established recalcitrance" that worked to undermine the attorney's efforts. *Id.*; *see also Fautenberry v. Mitchell*, 515 F.3d 614, 624 (6th Cir. 2008) (rejecting defendant's ineffective assistance of counsel claim, stating "Fautenberry's attempts to blame his counsel for his own recalcitrance and unwillingness to communicate do not demonstrate that counsel were deficient in failing to communicate meaningfully with Fautenberry").

The *Owens* court further observed, "[a] defendant cannot be permitted to manufacture a winning [ineffective assistance of counsel] claim by sabotaging her own defense, or else every defendant clever enough to thwart her own attorneys would be able to overturn her sentence on appeal." *Owens*, 549 F.3d at 412. Thus, the court concluded, "a client who interferes with her attorney's attempts to present mitigating evidence cannot then claim prejudice based on the attorney's failure to present that evidence." *Id.* Movant was just such a client. Indeed, the Sixth Circuit, in affirming Movant's conviction, stated that "[t]he only conflict between Besser and his counsel was one created by Besser himself." 265 F. App'x at 441. The court of appeals further held that this Court did not abuse its discretion in declining to grant Attorney Dunn's motion to withdraw, given that Besser was the cause of any difficulties in the attorney-client relationship: "'As a sister circuit has stated, a 'defendant, by unreasonable silence or intentional lack of cooperation, cannot thwart the law as to appointment of counsel.'" *Id.* (quoting *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985)).

In light of the foregoing, each of Movant's specific allegations lack merit. However, the Court will address each briefly.

**1) Trial Counsel**

Movant alleges that Attorney Dunn failed to object to the "fraudulent process" upon which he was brought from Mexico. Movant himself raised this issue with the Court, and the Court correctly found it to lack merit. (1:04-CR-165, Dkt. No. 170, at 20-25; Dkt. No.

172, at 615-20.)  Attorney Dunn had no duty to pursue this meritless issue further and, in any event, Movant was not prejudiced by any failure to pursue the argument, given its lack of merit.

Movant alleges that Attorney Dunn failed to object to evidence of his flight to Mexico or introduce evidence on the subject.  Movant offers no basis upon which an objection to such evidence would have been made.  Evidence that Movant knew he was under criminal investigation, but nevertheless went to Mexico, and specific evidence that he conducted "counter-surveillance" and otherwise attempted to evade service of a grand jury subpoena was directly relevant to Movant's consciousness of guilt and efforts to evade authorities.  An attorney's performance is not rendered deficient by virtue of his failure to make frivolous objections.  Moreover, Attorney Dunn cross-examined witnesses on these subjects, for example, establishing that aside from the failed "ruse" employed by agents to serve Movant with a grand jury subpoena, the only additional efforts they made to serve him were leaving two phone messages.  (1:04-CR-165, Dkt. No. 514, at 2210.)

Movant alleges that Attorney Dunn did not "bother" to make an opening statement or put on any defense or present any witnesses on his behalf.  This claim lacks merit because the record amply demonstrates that Movant did not provide any information which Attorney Dunn could present in support of Movant's unspecified defense theory.  Attorney Dunn specifically explained on the record (outside the presence of the jury) that he had discussed the pros and cons of presenting an opening statement, particularly the restrictions limiting

such statements to what the evidence will show, and Movant refused to participate in that conversation or provide any other input into his defense. (1:04-CR-165, Dkt. No. 516, at 2425-2428.) Movant cannot now complain about the manner in which the opening statement was handled. *Owens*, 549 F.3d at 412. Nor does Movant establish prejudice, in view of Movant's failure to identify what witnesses should have been called or how there is a reasonable probability that their testimony would have changed the outcome of the case.

Movant alleges that Attorney Dunn failed to investigate the charges and review records. As Attorney Dunn's affidavit makes plain, he reviewed all materials provided by the Government, including *Jencks* material, he read all witness statements, he reviewed all proposed exhibits, he reviewed all videotapes and transcripts, he prepared a trial notebook, he reviewed and commented on jury instructions and Government exhibits, and he otherwise prepared for the trial as though he had an active and participating client. (Dunn Aff. at ¶¶ 8, 9.) Any limitations on Attorney Dunn's ability to conduct additional investigation or review other records was the direct result of Movant's refusal to participate in the case. Thus, Attorney Dunn's performance was not deficient, and Movant has failed to identify any aspect of the case that, if investigated further, would have led to a different outcome.

Movant alleges that Attorney Dunn did not appear to know Sixth Circuit case law concerning money laundering, citing *United States v. Griffith*, 17 F.3d 865, 878-79 (6th Cir. 1994). *Griffith*, a case affirming the defendant's money laundering convictions, is inapposite to his case. Further, Attorney Dunn was not ineffective for failing to anticipate the Supreme

Court's decision in *United States v. Santos*, 553 U.S. 507 (2008).

Movant alleges that Attorney Dunn failed to object where other attorneys objected, giving as an example, an objection made by co-defendant Flynn's attorney that was overruled. In fact, Attorney Dunn made objections throughout the trial. (*See, e.g.*, 1:04-CR-165, Dkt. No. 470, at 98, 100; Dkt. No. 472, at 622; Dkt. No. 473, at 633; Dkt. No. 474, at 936; Dkt. No. 516, at 2564; Dkt. No. 517, at 2700; Dkt. No. 518, at 3228.) Movant identifies numerous additional objections that he believes should have been made, but does not identify legitimate bases for those objections, and wholly fails to show how the lack of any such objections prejudiced him.

Movant alleges that Attorney Dunn was ineffective at cross-examination, criticizing the length of Attorney Dunn's cross-examination of one Government witness. The length of a cross-examination is not always a reliable measure of its effectiveness. Moreover, the line of questioning Movant argues that Attorney Dunn should have pursued – that certain "pass through" funds were not income – would not have been fruitful. Despite receiving no information or assistance from his client, Attorney Dunn cross-examined at least 13 witnesses, including all of those witnesses who presented the most damaging testimony to Movant. Movant has failed to show deficient performance or prejudice.

Movant alleges that Attorney Dunn's representation was ineffective because his closing argument was only 13 transcript pages long. Again, length is not the measure of an effective closing argument, and Movant fails to identify what should have been argued that

was not, or how such an omission prejudiced him.

Movant states that Attorney Dunn did not have his permission to acknowledge during closing argument that Movant would have been guilty of failure to file taxes, if he had been charged with that crime. It is obvious from the record that this acknowledgment by counsel was a tactical decision to diffuse the impact of significant evidence that Movant failed to pay any taxes on more than $1 million that he took from investors from 1998 through 2001. (*See* 1:04-CR-165, Dkt. No. 515, at 2319-23.) Movant's assertion that he did not have enough "unreported income" during that period to be required to file an income tax return is completely belied by the record. Attorney Dunn's reference to Movant's failure to file tax returns was a necessary admission if he was to have any credibility with the jury, and it was part of Attorney Dunn's efforts to soften the impact of testimony (from the people who bought Movant's house) that Movant boasted about not paying taxes. (1:04-CR-165, Dkt. No. 521, at 3641.) This was prudent advocacy, not deficient performance, and Movant once again has failed to show prejudice.

Movant faults Attorney Dunn for purportedly failing to make objections during the jury instruction conference. However, Attorney Dunn reviewed and commented on the proposed jury instructions. (Dunn Aff. at ¶ H.) The fact that he did not independently assert formal objections on the record, in addition to those asserted by other attorneys, does not reflect deficient performance. Moreover, Movant identifies no objections that Attorney Dunn should have made – he says only that Attorney Dunn should have made the same

objections as the attorney representing co-defendant Flynn – and therefore Movant has not established prejudice.

Movant complains that Attorney Dunn does not object to a theory of defense instruction requested by co-defendant Visser's counsel, that defendants claimed their income was exempt from federal income tax laws because they called themselves a church or church auxiliary. Movant's contention that the evidence does not support this theory is belied by the record. As the court of appeals found in Movant's direct appeal, Movant "was a joint signatory with other defendants in some of the church-named accounts used to shuffle investors' funds." 265 F. App'x at 444. Indeed, Marcusse contended at trial that she lived off of "gifts" from Sanctuary Ministries. (1:04-CR-165, Dkt. No. 519, at 3168-69.) Presumably, the co-defendant whose counsel requested the instruction believed that this instruction might provide an explanation for this conduct and a basis for the defendants' alleged "good faith" belief that taxes were not owed on such funds. Movant has shown neither deficient performance nor prejudice based on Attorney Dunn's failure to object to the co-defendant's requested instruction.

Movant argues that Attorney Dunn should have asked for a limiting instruction for uncharged allegations under Rule 404(b). Movant does not specify what uncharged allegations were made. In fact, Attorney Dunn did object under Rule 404(b), in part, with regard to the Government's introduction of evidence relating to Movant's actions in signing a false statement under oath in connection with the "Valley Boyz" incident (where he

represented that the $600,000 invested was his own money, rather than an aggregated sum of other people's money). The Rule 404(b) objection ultimately was not sustained, but the objection was determined by the Court to be "well taken" and, as a consequence, the scope of the evidence admitted on the subject was narrowly tailored to avoid any basis for adverse inferences from perceived "other acts." (1:04-CR-165, Dkt. No. 473, at 743-53.) Movant does not identify any additional "other acts" that were at issue and thus fails so show deficient performance or prejudice stemming from the absence of jury instructions relating to such unspecified other acts.

Movant argues that Attorney Dunn should have immediately moved for a directed verdict or order of acquittal when the prosecutor "admitted" in rebuttal closing that a Ponzi scheme was not an element of the crimes with which Movant was charged. This allegation is without merit. As discussed, the defendants' scheme involved aspects of a classic Ponzi scheme, but it was not an "element" of the crime and the prosecutor did not "withdraw" any such element during closing or any other time. An attorney does not render deficient performance by failing to make a frivolous objection, nor is a defendant prejudiced by the absence of such an objection.

Movant argues that Attorney Dunn should have objected when the prosecutor "lied" during closing that even some "late" investors received Exhibit 1. Testimony at trial supported this assertion by the prosecutor. At least two "late" investors testified to having received Exhibit 1. (1:04-CR-165, Dkt. No. 472, at 412-13; Dkt. No. 475, at 1197-98.) Any

objection would have been frivolous.

Movant argues that Attorney Dunn was ineffective for failing to object that his right to a speedy trial was denied. The Court, in assessing the same claim by Marcusse in the original proceedings and again in her § 2255 motion, has already rejected the claim that the defendants were denied the right to a speedy trial. (*See* 1:04-CR-165, Dkt. No. 373; 1:09-CV-913, Dkt. No. 41, at 22-25.) For the same reasons laid out in those opinions, Movant's claim lacks merit.

Movant argues that Dunn was ineffective because he did not file a motion for judgment of acquittal on time. However, Attorney Dunn made a timely Rule 29 motion at trial, and renewed the motion. (1:04-CR-165, Dkt. No. 515, at 2396; Dkt. No. 520, at, 3490.) He also filed a motion for judgment of acquittal following the jury's verdict. (1:04-CR-165, Dkt. No. 436.) Although the Court denied the motion on the basis that it was untimely (1:04-CR-165, Dkt. No. 459), the motion also lacked merit, as reflected in the court of appeals' findings that the evidence was sufficient to sustain Movant's convictions. *See* 265 F. App'x 434. Therefore Movant has not established prejudice.

Movant argues that Attorney Dunn was negligent at sentencing for failing to object to references to the crime being a "Ponzi scheme." This argument lacks merit because, as previously discussed, it is premised on the erroneous assertion that the prosecutor somehow withdrew the allegation that defendants' fraudulent scheme involved aspects of a classic Ponzi scheme.

Movant argues that Attorney Dunn was ineffective because he was not present for the last day of trial. It is clear from the record that Attorney Dunn was absent because of the tragic death of a close relative. (1:04-CR-165, Dkt. No. 522, at 3683-84.) Attorney Dunn missed only the closing argument presented by Attorney Valentine and the Government's rebuttal. Attorney Valentine, who represented co-defendant Flynn, stood in for Attorney Dunn and objected to the jury instructions on behalf of both defendants. (1:04-CR-165, Dkt. No. 522, at 3785-88.) Movant makes no legitimate argument as to how he was prejudiced by the brief absence of Attorney Dunn.

Movant makes various allegations that, in total, he submits establish that "[t]he process in which the jury was led around to 'find' guilt was fundamentally unfair due to these ineffective and collusive 'defense' attorneys, who lacked the ethics and loyalty to their clients to stand up to a corrupt process." (Dkt. No. 11, at 212.) The various allegations state outlandish claims of collusion which, as discussed elsewhere in this opinion, are wholly unsupported by the record.

Movant argues that Attorney Dunn should have argued at sentencing that the "correct" guideline range for Movant was "zero," not 51-63 months. Such an objection would have been frivolous. Attorney Dunn made objections on Movant's behalf in a sentencing memorandum and at the sentencing hearing, even though Movant himself continued to set forth his belief that the Court lacked jurisdiction over him. There is no support for the allegation that Attorney Dunn was ineffective at sentencing.

Movant alleges that Attorney Dunn was ineffective for failing to argue that use of the 2004 Guidelines Manual violated the Ex Post Facto Clause. Movant has failed to show that this constituted deficient performance or that this prejudiced him, given that the use of the 2004 Guidelines was proper, as fully discussed in Part 5(f).

Movant alleges that Attorney Dunn failed to "catch" an alleged *Brady* violation revealed when the Court referenced at sentencing the fact that the City Center was in Gibraltar. This claim is frivolous. The fact that the City Center was associated with Gibraltar is in the pre-sentence report and is not evidence relevant to any purported *Brady* claim insofar as the information is not exculpatory.

Movant argues that Attorney Dunn should have objected to certain exhibits that the Government introduced at sentencing, as they purportedly related to transactions that occurred outside the statute of limitations. That objection would have been frivolous, as the exhibits were relevant to Movant's participation in the scheme in the early years. (*See* Dkt. No. 540, at 16-18.)

Movant asserts that Attorney Dunn should have objected to the prosecutor raising at sentencing the alleged "lies" of trial witness Julie Siemen. Nothing in the record indicates that Siemen's testimony was false. Thus, this allegation lacks merit.

Movant notes that the Court observed at sentencing that his daughter's letter reflected positively on him at sentencing and suggests that Attorney Dunn was therefore ineffective for failing to call his daughter to testify at trial. Movant has not presented any basis for the

Court to believe that his daughter had any relevant testimony to provide at trial. Even if she did have relevant testimony, Movant has not presented any evidence that he made Attorney Dunn aware of the fact that she had relevant testimony and would be willing to testify.

## 2) Appellate Counsel

Movant's cursory claim alleging ineffective assistance of appellate counsel is likewise without merit. A defendant claiming ineffective assistance of appellate counsel must satisfy the *Strickland* standard: (1) appellate counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for the deficient performance, the outcome of the appeal would have been different. 466 U.S. at 694; *Goff v. Bagley*, 601 F.3d 445, 462 (6th Cir. 2010). In deciding whether appellate counsel was ineffective for failing to raise an allegedly meritorious issue on appeal, the court must assess the strength of the claim appellate counsel failed to raise. *McFarland v. Yukins*, 356 F.3d 688, 700 (6th Cir. 2004). As the Sixth Circuit highlighted in *McFarland*, "[c]ounsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Id.* at 699. Moreover, a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Movant is not specific with regard to his criticisms; he states only: "Martin Beres only raised claims of the denial of the right to proceed pro se and *Booker* issues." (Dkt. No. 11, at 221.) First, as Attorney Beres points out in his affidavit, that assertion is incorrect. Attorney Beres raised several issues, including the self-representation issue, a sufficiency of the evidence challenge, and a number of sentencing issues. (Dkt. No. 34, Attach. D, Beres Aff. ¶ 3.) Attorney Beres also sets forth the extensive efforts he undertook to prepare Movant's appeal, including review of 4,500 pages of trial transcript, 400 trial exhibits, and voluminous discovery materials. (*Id.* at ¶4.) Attorney Beres consulted with Movant concerning the appeal, and Movant indicated his "approval and satisfaction with the legal arguments and issues set forth in the briefs." (*Id.* at ¶¶ 5, 6.) Movant never communicated to Attorney Beres the issues he now contends should have been raised. (*Id.* at ¶ 8.) As

Attorney Beres makes plain, he chose the issues that, in his estimation, were the most meritorious. (*Id.* at ¶ 10.) Any allegations that Attorney Beres colluded with the Government or the court of appeals or any other person or entity against Movant is categorically denied. (*Id.* at ¶ 14.) Movant has not presented any evidence that rebuts Attorney Beres's affidavit.

In light of the foregoing, Movant has failed to establish that his appellate counsel was ineffective. He has not set forth any "dead bang winner" argument that was not raised on direct appeal. The only colorable claim that Movant advances in his § 2255 motion that was not raised on appeal is the *Santos* claim, but that claim is predicated on a change in the law, and counsel cannot be found ineffective for failing to anticipate such a change. Where existing law at the time of counsel's decision did not completely support the claim, courts have found it well within the range of competent assistance for counsel to choose to focus on other issues, whether counsel consciously identified the existence of the claim or not. *See, e.g., Smith v. Murray*, 477 U.S. 527, 535-36 (1986).

## 5. **Sentencing Claims**

### a) **Change in law –** *Santos*

Movant asserts that the Supreme Court's holding in *United States v. Santos*, 553 U.S. 507 (2008) – that "proceeds" under 18 U.S.C. § 1956(a)(1) means "profits" – precludes his conviction on the money laundering counts. Movant is correct as to the counts of conviction involving promotion money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (Counts

43-57). The government has conceded that Movant is entitled to collateral relief for those counts. (Dkt. No. 34, at 53.)

In *Santos*, the plurality concluded that because "proceeds" could fairly be interpreted to mean either "profits" or "receipts," the rule of lenity means that proceeds must be limited to profits, at least insofar as it was applied to an illegal lottery where the government charged promotional money laundering. 553 U.S. at 514-15. This was to avoid what the Court called a "merger" problem. *Id.* at 516. The Court explained that interpreting proceeds to mean receipts would mean that every person who operated an illegal lottery would, by default, simultaneously commit promotional money laundering "because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery." *Id.*

The Sixth Circuit has interpreted *Santos* as follows: "[proceeds] means profits *only when the § 1956 predicate offense creates a merger problem* that leads to a radical increase in the statutory maximum sentence and only when nothing in the legislative history suggests that Congress intended such an increase." *United States v. Kratt*, 579 F.3d 558, 562 (6th Cir. 2009) (emphasis added). The Sixth Circuit put it a different way in a later opinion: "[A] merger problem arises when defining 'proceeds' as 'receipts' automatically makes commission of the predicate offense a commission of money laundering and where the predicate offense carries a much lower statutory maximum sentence than the associated money laundering." *United States v. Crosgrove*, 637 F.3d 646, 655 (6th Cir. 2011).

57

Because there is a merger problem with counts 43-57, as the government concedes, Movant is entitled to collateral relief on those counts. However, Movant is not entitled to collateral relief for the other money laundering count (41) because that count does not raise a merger problem. *See Kratt*, 579 F.3d at 562 (requiring a merger problem for *Santos* to apply). Count 41 regarded conspiracy to commit money laundering under 18 U.S.C. § 1956(h). Movant's conviction on this count is still valid because it was premised on both promotion *and* concealment overt acts. (*See* 1:04-CR-165, Dkt. No. 108, Superseding Indictment 23-24.) The government's evidence at trial established that Movant was an integral member of the conspiracy, from the beginning. Moreover, there were numerous overt acts of concealment by Movant and his co-defendants. As discussed in Count 41 of the superseding indictment, these acts included the deposit of victims' funds into bank accounts controlled and used by the defendants in the names of purported church chapters, "[k]nowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds . . ." (*Id.* at 23.)

However, just because Movant is entitled to collateral relief on Counts 43-57, the Court is not obligated to grant him § 2255 relief. The "concurrent sentencing doctrine" invests the Court with discretion to decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction. *See United States v. Ware*, 282 F.3d 902, 906 (6th Cir. 2002); *United States v. Wade*, 266 F.3d 574, 578 (6th Cir. 2001); *United States v.*

58

*Hughes*, 964 F.2d 536, 541 (6th Cir. 1992); *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir.1989). Applying this principle, the Supreme Court and the Sixth Circuit have declined to review convictions on one count where the presence of a valid concurrent sentence on a different count is sufficient to retain the defendant in custody. *See, e.g., Hirabayashi v. United States*, 320 U.S. 81,105 (1943); *United States v. Burkhart*, 529 F.2d 168, 169 (6th Cir. 1976). The standard guiding the court's discretion is whether there exists any possibility of an adverse "collateral consequence" if the conviction is allowed to stand. *See Hughes*, 964 F.2d at 541; *Dale*, 878 F.2d at 935 n.3; *see also United States v. Byrd*, No. 89-CV-6448, 1990 WL 116538, at * 3 (6th Cir. Aug.13, 1990); *Garris v. Curtin*, No. 1:05-CV-209, 2008 WL 680416, at *11 (W.D. Mich. Mar. 7, 2008).

The Court imposed a sentence of 240 months on Count 41, to run concurrently with a sentence of 240 months on Counts 43 through 57, along with a concurrent sentence of 60 months on Counts 1 through 39 and 42. Thus, all the money laundering counts carried a 240-month concurrent sentence. The Court also imposed concurrent three-year terms of supervised release as to each count. (1:04-CR-165, Dkt. No. 540.) Thus, the sentences are completely concurrent.

However, the Court did assess a $100 special assessment for each of Movant's 57 counts of conviction, for a total of $5,700. (*Id.*) In *Ray v. United States*, 481 U.S. 736, 737 (1987) (per curiam), the Supreme Court held that the concurrent sentencing doctrine does not apply where a defendant must pay an assessment on each count of conviction. Thus, the

Sixth Circuit has declined to apply the doctrine in such cases. *See Ware*, 282 F.3d at 906; *Wade*, 266 F.3d at 579. Nevertheless, on October 16, 2006, the Court remitted the entire special assessment. (1:04-CR-165, Dkt. No. 676.)

Accordingly, because Movant's sentences for his money laundering convictions are fully concurrent, the Court declines to award relief as to the counts of conviction for promotion money laundering (Counts 43-57) pursuant to the concurrent sentencing doctrine. *See, e.g., United States v. Garcia-Flores*, 136 F. App'x 685, 688 (5th Cir. 2005) (declining to review sufficiency of the evidence challenge to one count, where concurrent sentence was imposed for another valid count of conviction and separate assessments originally imposed for each count had been remitted).

### b) 18 U.S.C. § 1346

Movant also argues that 18 U.S.C. § 1346 is not legally adequate to support his convictions because the jury was instructed on "honest services" fraud and the term "specialized high return investments" was used at Marcusse's sentencing. Because Movant did not contemporaneously object to either action by the Court, he has procedurally defaulted these arguments and must demonstrate "cause" and "actual prejudice" excusing the default. Movant fails to do so.

Even if the arguments were not defaulted, they would not warrant collateral relief. When the Court used the term "honest services" fraud, it did so in the context of explaining to the jury the difference between tangible and intangible rights. (1:04-CR-165, Dkt. No.

60

522, at 3757.)  The Court correctly identified "honest services" as a type of intangible right.

(*Id.*)  However, this Court never instructed the jury that the Government's theory of the case

against Movant and his co-defendants was that they engaged in a scheme to defraud anyone

of "honest services" or any other intangible right.  Indeed, the Government presented a theory

of guilt and proof at trial that the defendants schemed to deprive victims of their money,

which is tangible property.  (1:04-CV-165, Dkt. No. 521, at 3503, 3511-17.)  Because the

jury was not asked by the Government to convict the defendants on an intangible rights or

"honest services" theory, and this Court did not actually instruct them to review the evidence

under such a theory, the Court's explanation could not have rendered the trial fundamentally

unfair.  *See McGuire*, 502 U.S. at 72.  Thus Movant's claim is without merit.

As for the Court's use of the term "specialized high return investments" at Marcusse's

sentencing, it had no bearing whatsoever on Movant's sentence, and Movant is not the proper

party to object to it.  Moreover, it had no affect on Marcusse's sentence.  The Court simply

and accurately described in lay terms the same scheme that the government described as

involving alleged "high return" "investment vehicles" earning "three to ten percent a month"

(1:04-CR-165, Dkt. No. 470, at 42) or "high yield investment program[s]" (1:04-CR-165,

Dkt. No. 521, at 3515) – such as the "eight percent program" (*Id.* at 3513, 3238) – which

were allegedly "backed by the federal reserve" and yet "'non-taxed.'" (*Id.* at 3514).

Marcusse herself described what she sold as "private placement" "programs" (1:04-CR-165,

Dkt. No. 518, at 3029) that earned as much as "eight" (*Id.* at 3238), "ten or eleven percent"

(*Id.* at 3022) and even paid "tax-free gifts" to investors. (1:04-CR-165, Dkt. No. 520, at 3398). Thus this claim is without merit.

### c) Sentences miscalculated

Next Movant argues that his sentence was miscalculated because investor losses were not directly caused by him. Ordinarily, claims asserting alleged guideline calculation errors are not cognizable on collateral review. *Grant v. United States*, 72 F.3d 503, 505-06 (6th Cir. 1996). In any case, this claim is without merit; Movant's allegations are conclusions rather than statements of fact and are not supported by the record, his motion, or exhibits. (1:04-CR-165, Dkt. Nos. 470-78, 513-22.) Last, the Court notes that the court of appeals explicitly rejected this argument by Movant. 265 F. App'x at 447. A party may not relitigate issues that have been resolved on direct appeal. *See, e.g.*, *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

### d) Losses were miscalculated

Additionally, Movant contends that the total amount of losses and restitution was miscalculated. Relief under 28 U.S.C. § 2255 is available only for prisoners "claiming the right to be released." 28 U.S.C. § 2255 (2006). A challenge to an order of costs or restitution is not a claim of the right to be released. Thus, challenges to fines, restitution, and other financial penalties are not cognizable under § 2255. *See United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995); *Kaminski v. United States*, 339 F.3d 84,85 (2d Cir. 2003); *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997); *Smullen v. United States*, 94

F.3d 20, 25 (1st Cir. 1996).

The Sixth Circuit has plainly stated: "[a] challenge to a restitution order is not cognizable in a motion to vacate under § 2255." *United States v. Washington*, 172 F.3d 50, 1998 WL 898878, at *2 (6th Cir. 1998). Although the Sixth Circuit permits a defendant to challenge a restitution order on collateral review if it is related to a claim of ineffective assistance of counsel, *Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993), that exception is not available to Movant because he does not premise his restitution claim on ineffective assistance of counsel.

In any event, Movant's claim consists solely of conclusions that are not supported by the record, his motion, or the exhibits.

**e) Sentence proportionality**

Movant also contends that his sentence was "grossly disparate" on both a local and national basis. Outside of extraordinary circumstances, claims of non-constitutional error in sentencing cannot be raised in a § 2255 motion. *United States v. McArthur*, 2011 WL 2144436, at *1 (E.D. Mich. May 31, 2011). "'The mere fact that the plaintiff's sentence is greater than that of his co-defendant does not warrant relief under § 2255.'" *Id.* (quoting *Kessel v. United States*, 785 F.2d 309, 1986 WL 16448, at * 1 (6th Cir. Jan. 16, 1986)). "There is no violation of a constitutional right because the United States Constitution contains no strict proportionality guarantee . . . Furthermore, the mere disparity of a sentence even among codefendants does not in and of itself suggest that one defendant has been

63

arbitrarily singled out for a more severe punishment than that normally imposed upon similarly situated defendants.'" *Id.* (quoting *Terry v. Tripplett*, 62 F.3d 1418, 1995 WL 469424, at *1 (6th Cir. Aug.7, 1990)).

A defendant who complains that his sentence is disproportionately severe compared to sentences received by others is not entitled to collateral relief; "[w]hen the sentence is within the statutory limits, a defendant cannot collaterally attack its severity." *United States v. Burns*, Nos. 86-10, 86-26, 1988 WL 122735, at *6 (E.D. Ky. October 14, 1988) (citing *Orr v. United States*, 408 F.2d 1011 (6th Cir. 1969)).

Thus, because Movant does not have a constitutional right to the same sentence as other defendants, and because his sentence was within statutory limitations, his claim of sentencing disparity lacks merit.

### f) Use of 2004 sentencing guidelines

Next Movant argues that the use of the 2004 sentencing guidelines – as opposed to the 2000 version – violated the Ex Post Facto Clause. The Court used the November 1, 2004, edition of the Guidelines to determine Movant's advisory guideline range during sentencing, in accordance with U.S.S.G. § 1B1.11(a), which directs that the Guideline Manual in effect at the time of sentencing is to be used, unless there are ex post facto concerns. In this case, Movant was convicted of three conspiracy counts: Count 40 (conspiracy to commit mail fraud); Count 41 (conspiracy to commit money laundering); and Count 42 (conspiracy to defraud the United States). Each of these counts charged a continuing offense from January

1998, to October 27, 2004. Under U.S.S.G. § 1B1.11, comment. n.2, in the case of a continuing offense, the last date of the continuing offense is controlling for ex post facto purposes.

Here, the last date of Movant's conspiracy convictions was October 27, 2004. The crime thus "straddled" the 1998 and 2003 editions of the Sentencing Guidelines. The Sixth Circuit has routinely held that, for ex post facto purposes, the most recent version of the Guidelines applies to straddling crimes. *See, e.g. United States v. Green*, 242 F. App'x 343, 348 (6th Cir. 2007); *United States v. Barger*, 931 F.2d 359, 365 (6th Cir. 1991); *United States v. Edgecomb*, 910 F.2d 1309, 1311 (6th Cir. 1990). As the last date of the conspiracy counts was October 27, 2004, the November 1, 2003, Guidelines Manual might apply if that manual was more beneficial to Movant. However, no difference in scoring would have resulted if the November 1, 2003, Guideline Manual had been used.

Consequently, the Court properly used the 2004 Guidelines. The fact that some of the substantive mail fraud and money laundering acts occurred on earlier dates is irrelevant because the Government proved that the conspiracies contemplated "continuity of purpose." *See United States v. Gardiner*, 463 F.3d 445, 463 (6th Cir. 2006). Therefore, the Government was entitled to a presumption that the conspiracy continued and Movant remained a party unless and until he showed that the conspiracy terminated or he affirmatively withdrew. *See United States v. Goff*, 400 F. App'x 1, 25 (6th Cir. 2010). Here, as in *Goff*, Movant made no such showing.

Thus, because the Court must follow the "one book rule," it may not apply separate guideline sections from different editions of the Guidelines manual. Instead, it must apply the revised version of the Guidelines pertaining to the most recent offense. *See United States v. Duane*, 533 F.3d 441, 449 (6th Cir. 2008) (citing U.S.S.G. § 1B1.11(b)). In this case, that was the 2004 version. Moreover, the substantive counts were grouped with the conspiracy counts. When offenses are grouped together for sentencing purposes, application of the amended version of the Guidelines to the earlier offenses does not violate the ex post facto clause. *Id.* The grouping rules provide sufficient notice to the defendant that revised guidelines may apply to substantially similar prior offenses. Thus, any disadvantage based upon the newer guidelines results from the defendant's choice to commit further crimes, rather than from changes in law. *Id.* at 448.

**g) Various other reasons for miscalculation**

The thrust of Movant's argument is that the facts determined by the jury to be proven beyond a reasonable doubt are actually untrue. It is the function of the jury to determine "whether the prosecution has proved each element of an offense beyond a reasonable doubt." *Oregon v. Ice*, 555 U.S. 160, 160 (2009). Movant's arguments that determinations made by the jury were not actually proven to be true beyond a reasonable doubt are thus without merit. All other issues Movant raises within this argument, the Court has addressed previously in this opinion.

**h) Judicial bias**

Movant also alleges that judicial bias caused him to receive an unreasonable and unconstitutional sentence. This argument has already been addressed in regard to the trial. It is equally without merit in regard to sentencing. Movant's allegations consist of nothing more than conclusory statements unsupported by the record, Movant's motion, or the exhibits.

## IV.

Almost all of Movant's claims were not raised on appeal and are thus procedurally defaulted. Regardless, all of Movant's claims are without merit except for one. The one claim which does have merit – the *Santos* claim – only entitles Movant to collateral relief on counts 43-57. However, the Court has discretion to decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction. Because that is the case here, the Court declines to grant Movant § 2255 relief.

Pursuant to 28 U.S.C. § 2253(c), the Court must also assess whether to issue a certificate of appealability to Movant. To warrant a grant of a certificate of appealability, Movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Sixth Circuit Court of Appeals has disapproved of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine

whether a certificate is warranted. *Id.* Upon review of each claim, the Court does not believe that reasonable jurists would find its assessment of Movant's claims to be debatable or wrong. Accordingly, a certificate of appealability will be denied as to each claim.

An order will be entered consistent with this opinion.


Dated: <u>January 25, 2013</u>                    <u>/s/ Robert Holmes Bell                  </u>
                                          ROBERT HOLMES BELL
                                          UNITED STATES DISTRICT JUDGE